**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC CITY ASSOCIATES LLC, et al., | |
| Plaintiffs, | Civil Action No. **05-3227 (NLH)** **(Lead Case)** |
| v. | |
| CARTER & BURGESS CONSULTANTS, INC., et al., | **OPINION** |
| Defendants. | |

| | |
|---|---|
| PALMIERI/PETROCELLI JOINT VENTURE, | |
| Plaintiff, | |
| v. | (05-5623 Consolidated) |
| ATLANTIC CITY ASSOCIATES LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| THOMAS COMPANY, INC., | |
| Plaintiff, | |
| v. | (06-3735 Consolidated) |
| KEATING BUILDING CORP., et al., | |
| Defendants. | |

**Appearances:**
JOSEPH A. BATTIPAGLIA
VERONICA J. FINKELSTEIN
DUANE MORRIS LLP
ONE LIBERTY PLACE
PHILA., PA 19103-3185
*Attorneys for Atlantic City Associates LLC*

DENNIS P. HERBERT
POWELL TRACHTMAN
1814 EAST ROUTE 70
SUITE 304
CHERRY HILL, NJ 08003
*Attorney for Carter & Burgess Consultants, Inc.*

GLENN W. REIMANN
SARAH PATRICE O'DONNELL
COZEN O'CONNOR
1900 MARKET STREET
PHILADELPHIA, PA 19103
    *And*
JULIE B. NEGOVAN
COZEN O'CONNOR
457 HADDONFIELD ROAD
CHERRY HILL, NJ 08002
*Attorneys for Keating Building Corporation and Liberty Mutual Insurance Company and Daniel J. Keating Construction Corp.*

MARTIN P. SKOLNICK
5021 INDUSTRIAL ROAD
FARMINGDALE, NJ 07729
    *And*
THOMAS M. MULCAHY
PURCELL, RIES, SHANNON, MULCAHY & O'NEILL
ONE PLUCKEMIN WAY
PO BOX 754
BEDMINSTER, NJ 07921
*Attorney for Avon Brothers, Inc. d/b/a Avon Contractors, Inc.*

JOHN F. PALLADINO
JENNA M. COOK
HANKIN, SANDMAN & PALLADINO
30 SOUTH NEW YORK AVENUE
ATLANTIC CITY, NJ 08401
*Attorney for Thomas Company, Inc.*

BRADLEY K. SCLAR
DANA B. OSTROVSKY
PARKER, MCCAY
THREE GREENTREE CENTRE, SUITE 401
ROUTE 73 & GREENTREE ROAD
PO BOX 974
MARLTON, NJ 08053
*Attorney for Petrocelli/palmieri Joint Venture*

CRAIG L. LEVINSOHN
ARONSOHN WEINER & SALERNO
COUNSELLORS AT LAW
263 MAIN STREET.
HACKENSACK, NJ 07601
*Attorney for Johnston Architectural Systems, Inc., d/b/a Delta Fountains, Inc.*

JOHN G. RICHARDS, II
DAVIS, BUCCO, & ARDIZZI, ESQS.
10 EAST 6TH AVENUE
SUITE 100
CONSHOHOCKEN, PA 19428
*Attorney for Davis-Giovinazzo, Inc.*

ANET L. TREIMAN
STEPHANIE WISDO
COHEN SEGLIAS PALLAS GREENHALL & FURMAN
2 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
*Attorney for Vincent J. Borrelli, Inc.*

**HILLMAN, District Judge**

### I. BACKGROUND

**A. The "Walk Project"**

These consolidated cases involve a construction project for mixed retail and commercial use property located in Atlantic City, New Jersey referred to as "The Walk" in Atlantic City (the "Walk Project"). Atlantic City Associates, LLC ("ACA"), is the lessee of the property. Carter & Burgess Consultants, Inc. ("C&B"), provided the architectural, engineering and other design services. Keating Building Corporation ("Keating") was the general contractor and Liberty Mutual Insurance Company ("Liberty") issued payment and performance bonds for the Walk Project.

3

Keating hired several subcontractors to work on the Walk Project, including Thomas Company, Inc. ("Thomas").  On December 12, 2002, Keating and Thomas entered into a contract wherein Thomas agreed to provide certain labor, materials and services to complete roofing for the Walk Project in exchange for $1,600,000.00.  The Walk Project experienced delays and ACA and Keating each blamed the other for the delays.  Eventually, the disagreement resulted in litigation.

Thomas originally filed a complaint in the Superior Court of New Jersey against Keating and Liberty seeking payment from Keating and Liberty for work performed on two separate, unrelated projects: the Walk Project and the "Rowan Project" (discussed <u>infra</u>).  Keating and Liberty removed Thomas's state court action to Federal court on the basis of diversity jurisdiction which case was consolidated with two related Federal court actions as captioned above.  Keating and Liberty also filed counterclaims against Thomas seeking indemnification and contribution from Thomas in the event they are liable to ACA for damages caused by the delays.  In addition, Keating and Liberty filed a third-party complaint against Thomas alleging that Thomas breached the terms of the subcontract by failing to provide adequate materials and manpower on a timely basis to perform and complete the work in compliance with the Walk Project schedule.

**B.  The Rowan Project**

On December 21, 2003, Keating entered into a contract with Rowan University whereby Keating agreed to serve as the general contractor for the construction of townhouses at the University. (the "Rowan Project").  Pursuant to the contract with Rowan, Liberty issued two payment bonds to Rowan University as obligee. Keating was the principal on one of the bonds.  Landmark/Keating Joint Venture ("Landmark/Keating") was the principal on the other.

There is some confusion about the date and/or the parties with whom Thomas contracted to perform the roofing work on the Rowan Project.  Although Thomas states that on August 26, 2004, it and Keating entered into a contract whereby Thomas agreed to provide certain labor, materials and services to complete roofing for the Rowan Project in exchange for $2,508,160.00 (the "Rowan Contract"), the contract attached to its brief is a subcontract dated August 4, 2004, between Landmark/Keating and Thomas. Keating alleges that on June 25, 2004, it entered into a subcontract with Thomas dated March 17, 2004 and revised May 21, 2004, for the roofing work for the sum of $2,508,160.00.  It states that the May 21, 2004 subcontract was amended and the final subcontract price was $1,717,229.00.  Keating states that on August 26, 2004, a subcontract was entered into between Thomas and Landmark/Keating dated August 4, 2004, but that the

subcontract amount was for $481,207.00.  Keating does not provide the Court with a copy of the subcontract with Landmark/Keating and Thomas did not provide the attached schedules to the contract that list the payments.[1]

Nonetheless, both parties acknowledge that a "setoff" paragraph was included in the subcontracts.  Under the heading "Assignment" it reads:

> The Subcontractor agrees (a) that it will not assign this Subcontract or any moneys due it, or to become due it hereunder, or sublet any portion of the work without first obtaining written consent of the Contractor, and (b) that Contractor shall have the right to set off against any moneys due Subcontractor under this Subcontract any claim or claims against Subcontractor, whether arising under this Subcontract, or any other Subcontract or Subcontracts between the parties hereto.

The parties agree that Keating has been paid in full for the Rowan Project and Thomas has completed all the work in accordance with the Rowan Contract.  It also agreed that Keating has not paid Thomas the amount of $184,649.55 due under the subcontracts.

Keating has stated that its refusal to pay Thomas the $184,649.55 is based on its contractual and common law right to apply those funds as a setoff against any amount Keating is required to pay ACA regarding the Walk Project.  Thomas argues that Keating's attempt to setoff the $184,649.55 against any

---

[1] Thomas does not dispute Keating's rendition of the terms of the subcontracts and the dates of the subcontracts.

amount Keating may owe under the Walk Project violates the Public Works Bond Act and Trust Fund Act.

Before the Court is Thomas's motion for partial summary judgment on its affirmative claim against Keating for payment of $184,649.55 on the Rowan Project.  We hold that: (a) Thomas is entitled to the protections of the New Jersey's Bond Act and Trust Fund Act, and (b) that Keating has failed to demonstrate a material issue of fact regarding Thomas's alleged waiver of its rights under those Acts.  Therefore, Thomas's motion is granted.

## II.  JURISDICTION

In each of the consolidated cases, there is complete diversity between the plaintiff and defendant, and the parties have plead an amount in controversy in excess of $75,000.00.  Therefore, this Court exercises subject matter jurisdiction over these consolidated cases pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.

7

P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana

v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.    The Bond Act and the Trust Fund Act.**

The parties agree that the Rowan Project which involves a state-funded university was a project funded by the State of New Jersey and, therefore, implicates New Jersey's Bond Act and Trust Fund Act.  See  N.J.S.A. 2A:44-143 to 147, and N.J.S.A. 2A:44-148, respectively.

The Bond Act requires the contractor to furnish a bond and states in relevant part:

> When public buildings or other public works or improvements are about to be constructed, erected, altered or repaired under contract, at the expense of the State or any contracting unit... the board, officer or agent contracting on behalf of the State, contracting unit or school district, shall require delivery of the payment and performance bond issued in accordance with N.J.S. 2A:44-147 and otherwise, as provided for by law, with an obligation for the performance of the contract and for the payment by the contractor for all labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of such buildings, works or improvements provided by subcontractors or material suppliers in contract with the contractor, or subcontractors or material suppliers in contract with a subcontractor to the contractor, which class of persons shall be the beneficiaries of the payment and performance bond.

N.J.S.A. 2A:44-143.

The New Jersey Trust Fund Act provides that money paid by

9

the government to a contractor under a contract for public improvement constitutes a trust fund for the laborers and materialmen under that contract.  See N.J.S.A. 2A:44-148.  The Trust Fund Act states:

> All money paid by the state of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any such person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid.

N.J.S.A. 2A:44-148.

The Trust Fund Act provides that "... the funds in the hands of the prime contractor constitute a trust fund to inhibit their diversion for purposes unconnected with the public project." Universal Supply Co. v. Martell Const. Co., Inc., 383 A.2d 1163, 1166 (N.J.Super.A.D. 1978) (citing Hiller & Skoglund, Inc. v. Atlantic Creosoting Co., Inc., 190 A.2d 380 (N.J. 1963); Key Agency v. Continental Cas. Co., 155 A.2d 547 (N.J. 1959); Stulz-Sickles Co. v. Fredburn Constr. Corp., 169 A. 27 (N.J. Ch. 1933)).

There is little dispute regarding the underlying facts in this case.  The parties agree that Thomas was a subcontractor and

therefore is a beneficiary of the payment and performance bond. The facts are also undisputed that Liberty is the surety on the bonds under the Rowan Contract. There is no dispute that the Rowan Project as a state improvement project implicates the Trust Fund Act and that payment by the government constitutes a trust fund in the hands of Keating.

The issue disputed by the parties is whether the Bond Act and/or the Trust Fund Act render the setoff provision in the subcontracts unenforceable. Or, to put it another way, whether the setoff provision was an effective waiver of Thomas's rights under both Acts. To answer this, we first review the language of the contracts.

### C. The Setoff Provision

There is no dispute that the subcontracts contain an unambiguous setoff provision providing that: "... Contractor shall have the right to set off against any moneys due Subcontractor under this Subcontract any claim or claims against Subcontractor, whether arising under this Subcontract, or any other Subcontract or Subcontracts between the parties hereto."

New Jersey law on contract interpretation provides that "[t]he court will not make a different or better contract than the parties have seen fit to make for themselves. Gofman v. Dell'Aquila, No. L-454-06, 2008 WL 281586, at *6 (N.J.Super.A.D. Feb. 04, 2008) (quoting Schnakenberg v. Gibraltar Sav. & Loan

11

Ass'n, 37 N.J.Super. 150, 155 (App.Div. 1961)). "In the interpretation of a contract the intention of the parties is to be gathered from the language used in the instrument as a whole." Id. (citing Washington Construction Co., Inc., v. Spinella, 13 N.J.Super. 139 (App.Div. 1951), aff'd, 8 N.J. 212 (1951)). Under New Jersey law, "'evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation,' even if a contract is free from ambiguity." Id.

Here, the surrounding circumstances include the fact that the Rowan project was subject to the Bond Act and the Trust Fund Act. No court has ruled on whether the protections afforded by both those Acts can be contractually waived.[2] The New Jersey courts, however, have ruled that a mechanics lien can be contractually waived. See General Elec. Co. v. E. Fred Sulzer and Co., 207 A.2d 346, 352-53 (N.J.Super.L.D. 1956), aff'd, 222 A.2d 655 (N.J.Super.A.D. 1966), cert. denied, 225 A.2d 362 (N.J. 1966). Although mechanics liens were superceded in 1993 by the

---

[2] The cases cited by Thomas for the proposition that a contractor who holds funds in trust cannot setoff those funds against an unrelated claim are distinguishable from this case because those cases do not involve a contractual provision explicitly permitting setoff. Indeed, in National Sur. Corp. v. Barth, 89 A.2d 104, 108 (N.J.Super.Ch. 1952), the court stated, "[t]he contracts do not authorize any such set-off."

Construction Lien Law,³ see <u>400 Blair Road Realty Holdings, LLC v. Wells Fargo</u>, No. L-217-04, 2007 WL 1518309, at *4 (N.J.Super.A.D. May 25, 2007), mechanics liens and the Bond Act were traditionally viewed "in pari materia" and were construed together. See <u>Unadilla Silo</u>, 586 A.2d at 231 (quoting <u>Morris County Indus. Park v. Thomas Nicol Co.</u>, 173 A.2d 414, 416 (N.J. 1961)). Therefore, we analogize cases regarding waiver of a mechanics lien to this case.

In <u>General Elec.</u>, the court held that "a materialman's knowledge of a no-lien provision in the underlying contracts ... constitutes a waiver of all lien rights." <u>Id.</u> at 353. The court assumed that the no-lien clauses in the contract proscribed the filing of any liens but nevertheless found that the defendants failed to establish that the language of the clauses was communicated to the materialman in that case, General Electric. <u>Id.</u> The court concluded that "[c]lear and unmistakable evidence of such knowledge [of waiver] is necessary before the court will find that there has been a waiver." <u>Id.</u>

---

³ The Construction Lien law is similar in intent to the previous mechanics lien, and states in relevant part:

> Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price... .

N.J.S.A. 2A:44A-3

Applying New Jersey's method of contract interpretation and waiver, we find that the setoff provision included in the subcontracts did not operate as a waiver as a matter of law. First, the provision allowing Keating to setoff any moneys due to Thomas appears as subpart (b) under the fifteenth paragraph heading entitled "Assignment."  Subpart (a) of the paragraph pertains to the heading and prohibits the subcontractor from assigning the subcontract or any moneys without first obtaining the permission of the contractor.  Subpart (b), however, does not deal with assignment but, rather, is a setoff provision.  Therefore, not only is there no indication of a waiver, it is not clear that it is even a setoff provision.

Secondly, waiver is an affirmative defense.  See Fed.R.Civ.P. 8(c) (requiring that affirmative defense of waiver be plead in a responsive pleading); see also Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 321 n.6 (3d Cir. 2006)(stating that in diversity cases affirmative defenses under state law are generally treated the same way by federal courts)(citing N.J. Ct. R. 4:5-4 requiring responsive pleading to set forth affirmative defenses including waiver).  Although Keating included waiver as part of its affirmative defenses in its answer, Keating has not plead sufficient facts that could allow a factfinder to find in its favor on this issue.  In order for a waiver to be valid, there must be "clear and unmistakable

14

evidence" that the subcontractor knowingly waived his rights. See Ilowite v. Diopsys, Inc., No. 04-2368, 2008 WL 305267, at *8 (D.N.J. Jan. 31, 2008)(stating that "[w]aiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them.")(citing Shebar v. Sanyo Bus. Corp., 111 N.J. 276, 291 (1988)); General Elec., 207 A.2d at 353.

Here, there is no explicit or even clear wavier provision of the subcontractor's rights under the Bond Act and/or the Trust Fund Act. The setoff provision does not include any language informing the subcontractor that he is waiving the provisions afforded under the Bond Act and/or the Trust Fund Act. There is no evidence presented that Thomas intentionally and knowingly waived his rights. Therefore, the setoff provision does not operate as a valid waiver of Thomas's rights under the Bond Act and/or the Trust Fund Act.

To be clear, we do not decide at this time, even assuming a knowing, voluntary and intentional waiver, whether the Bond Act and/or the Trust Fund Act can be waived contractually.[4] We do

---

[4] We note that there are public policy considerations underlying the Bond Act and the Trust Fund Act that would likely be considered in determining whether the protections under those Acts can be contractually waived. Cf. Erie Telecommunications, Inc. v. City of Erie, Pa., 853 F.2d 1084, 1099 (3d Cir. 1988) (acknowledging the "knowing, voluntary and intelligent" standard established by the Supreme Court for the waiver of constitutional

not need to reach that issue because even if such a waiver were valid under the applicable laws, defendant has failed to offer to prove facts sufficient to carry its burden on this affirmative defense.

Thus, the setoff provision does not operate as a valid waiver of the protections afforded under the Bond Act and/or Trust Fund Act. Therefore, summary judgment in favor of Thomas on its affirmative claim against Keating for $184,649.55 owed to Thomas under the Rowan Contract is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Thomas's motion for partial summary judgment is granted. An Order consistent with this Opinion will be filed.

    s/Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

rights but finding that public policy is also a factor)(citing Johnson v. Zerbst, 304 U.S. 458, 462-69 (1938)). As stated above, however, this issue is not presently before the Court.