**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC CITY ASSOCIATES LLC, et al., | |
| Plaintiffs, | Civil Action No. **05-3227 (NLH)** **(Lead Case)** |
| v. | |
| CARTER & BURGESS CONSULTANTS, INC., et al., | **OPINION** |
| Defendants. | |
| | |
| PALMIERI/PETROCELLI JOINT VENTURE, | |
| Plaintiff, | |
| v. | (05-5623 Consolidated) |
| ATLANTIC CITY ASSOCIATES LLC, et al., | |
| Defendants. | |
| | |
| THOMAS COMPANY, INC., | |
| Plaintiff, | |
| v. | (06-3735 Consolidated) |
| KEATING BUILDING CORP., et al., | |
| Defendants. | |

**Appearances:**
JOSEPH A. BATTIPAGLIA
VERONICA J. FINKELSTEIN
DUANE MORRIS LLP
ONE LIBERTY PLACE
PHILA., PA 19103-3185
*Attorneys for Atlantic City Associates LLC*

DENNIS P. HERBERT
POWELL TRACHTMAN
1814 EAST ROUTE 70
SUITE 304
CHERRY HILL, NJ 08003
*Attorney for Carter & Burgess Consultants, Inc.*

GLENN W. REIMANN
SARAH PATRICE O'DONNELL
COZEN O'CONNOR
1900 MARKET STREET
PHILADELPHIA, PA 19103
   *And*
JULIE B. NEGOVAN
COZEN O'CONNOR
457 HADDONFIELD ROAD
CHERRY HILL, NJ 08002
*Attorneys for Keating Building Corporation and Liberty Mutual Insurance Company and Daniel J. Keating Construction Corp.*

MARTIN P. SKOLNICK
5021 INDUSTRIAL ROAD
FARMINGDALE, NJ 07729
   *And*
THOMAS M. MULCAHY
PURCELL, RIES, SHANNON, MULCAHY & O'NEILL
ONE PLUCKEMIN WAY
PO BOX 754
BEDMINSTER, NJ 07921
*Attorney for Avon Brothers, Inc. d/b/a Avon Contractors, Inc.*

JOHN F. PALLADINO
JENNA M. COOK
HANKIN, SANDMAN & PALLADINO
30 SOUTH NEW YORK AVENUE
ATLANTIC CITY, NJ 08401
*Attorney for Thomas Company, Inc.*

BRADLEY K. SCLAR
DANA B. OSTROVSKY
PARKER, MCCAY
THREE GREENTREE CENTRE, SUITE 401
ROUTE 73 & GREENTREE ROAD
PO BOX 974
MARLTON, NJ 08053
*Attorney for Petrocelli/palmieri Joint Venture*

CRAIG L. LEVINSOHN
ARONSOHN WEINER & SALERNO
COUNSELLORS AT LAW
263 MAIN STREET.
HACKENSACK, NJ 07601
*Attorney for Johnston Architectural Systems, Inc., d/b/a Delta Fountains, Inc.*

JOHN G. RICHARDS, II
DAVIS, BUCCO, & ARDIZZI, ESQS.
10 EAST 6TH AVENUE
SUITE 100
CONSHOHOCKEN, PA 19428
*Attorney for Davis-Giovinazzo, Inc.*

ANET L. TREIMAN
STEPHANIE WISDO
COHEN SEGLIAS PALLAS GREENHALL & FURMAN
2 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
*Attorney for Vincent J. Borrelli, Inc.*

**HILLMAN, District Judge**

Before the Court is Thomas Company Inc.'s motion for partial summary judgment seeking to enforce an alleged settlement agreement between it and Keating Building Corporation. A hearing on this motion was held on September 23, 2008, in which counsel for both parties appeared before the Court. For the reasons expressed on the record and in this Opinion, Thomas's motion is granted.

## I. BACKGROUND REGARDING "THE WALK" PROJECT

These consolidated cases involve a construction project for mixed retail and commercial use property located in Atlantic City, New Jersey referred to as "The Walk" in Atlantic City (the "Project"). Atlantic City Associates, LLC ("ACA"), is the

owner/lessee of the property.  Carter & Burgess Consultants, Inc. ("C&B"), provided the architectural, engineering and other design services.  Keating Building Corporation ("Keating") was the general contractor and Liberty Mutual Insurance Company ("Liberty") issued payment and performance bonds for the Project.

Keating hired several subcontractors to work on the Project, including Thomas Company, Inc. ("Thomas").  On December 12, 2002, Keating and Thomas entered into a contract wherein Thomas agreed to provide roofing labor, materials and services for the Project in exchange for $1,600,000.00.  The Project experienced delays with the parties blaming the other for the delays.  Eventually, the disagreement resulted in litigation.

Thomas originally filed a complaint in the Superior Court of New Jersey against Keating and Liberty.  Keating and Liberty removed Thomas's state court action to Federal court on the basis of diversity jurisdiction which case was consolidated with two related Federal court actions as captioned above.  Keating and Liberty also filed counterclaims against Thomas seeking indemnification and contribution from Thomas in the event they are liable to ACA for damages.  In addition, Keating and Liberty filed a third-party complaint against Thomas alleging that Thomas breached the terms of the subcontract by failing to provide adequate materials and manpower on a timely basis to perform and complete the work in compliance with the Project

schedule.

## II. JURISDICTION

In each of the consolidated cases, there is complete diversity between the plaintiff and defendant, and the parties have plead an amount in controversy in excess of $75,000.00. Therefore, this Court exercises subject matter jurisdiction over these consolidated cases pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## III. BACKGROUND CONCERNING SETTLEMENT BETWEEN KEATING AND THOMAS

On October 7, 2004, Thomas submitted a claim to Keating in the amount of $200,276.00 in delay damages for the roof work performed on the Project. Keating apparently forwarded Thomas's claim to ACA. On August 25, 2005, Keating provided Thomas with ACA's reply that ACA was of the position that many of the delays on the Project were attributable to Keating and its subcontractors. In response, Thomas reduced its delay claim to $104,680.00. Keating sent ACA the revised figure from Thomas and asked ACA whether it was possible to get a "bottom line total Thomas offer to close out ACA portion" with the intent to offer Thomas an amount "to end their part of the project and take one more sub off the list."

ACA responded that it would pay Thomas fifty percent of its claim plus "markups." Keating then advised Thomas on September 25, 2005 that ACA made a lump sum offer for Thomas's

work and "open escalation claim" and indicated that ACA would pay Keating in two weeks, including Thomas's "remaining retainage." Keating stated that it was offering Thomas $104,000, plus Thomas's "remaining balance of retainage." Keating also stated that if the offer was acceptable, they would make every effort to provide the funds quickly, based on ACA's willingness to fund them within two weeks.

Thomas responded that it was not comfortable reaching "final settlement" without a confirmation of accounting between Thomas and Keating and confirmation that Keating had no outstanding back charges or claims against Thomas of any kind. Keating responded by letter dated September 29, 2005 and offered Thomas $161,356.00, which amount included $57,356.00 "in retainage." Keating also wrote that it confirmed with ACA that there are no "pending deducts to follow" and that Keating had evaluated its open items and had no "additional deducts as claims or backcharges." Finally, Keating wrote that ACA and Keating needed the "final waivers, etc. executed in order to release payment." Thomas states, and the record indicates, that it accepted Keating's offer the day it was received. Keating then wrote an email to Bill Barnes, Project Manager for ACA stating that Thomas accepted "our" final offer and asking that ACA forward the change order to expedite payment.

ACA did not forward the change order at that time as

requested.  Instead, shortly thereafter, ACA filed claims against Keating.  Keating never paid Thomas the settlement amount.  Thomas then filed suit against Keating and Liberty who in turn sued Thomas.  Before the Court is Thomas's motion for partial summary judgment on the ground that Keating and Thomas entered into a settlement agreement wherein Keating agreed to pay Thomas $161,356.00.  For the reasons expressed below, Thomas's motion is granted.

**IV.  DISCUSSION**

**A.  Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In considering a motion for summary judgment, a district court may not make credibility

7

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

    Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **B. Settlement**

    Since a settlement agreement is a form of contract, courts rely on general principles of state law to resolve disputes over such agreements. See McDonnell v. Engine Distributors, No. 03-1999 (JHR), 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (citing Mortellite v. Novartis Crop Prot., Inc.,

8

460 F.3d 483, 492 (3d Cir. 2006); Borough of Haledon v. Borough of N. Haledon, 817 A.2d 965, 975 (N.J.Super.A.D. 2003)).  In New Jersey, there is a strong public policy for settlement of litigation.  See Puder v. Buechel, 874 A.2d 534, 539 (N.J. 2005) (stating that "[f]or nearly forty-five years, New Jersey courts have found that the "'[s]ettlement of litigation ranks high in [the] public policy'" of this State.")(citing Nolan ex rel. Nolan v. Lee Ho, 577 A.2d 143 (N.J. 1990) (quoting Jannarone v. W.T. Co., 476, 168 A.2d 72 (N.J.Super.A.D.), cert. denied, 171 A.2d 147 (N.J. 1961)).  As long as the essential terms are agreed to by the parties, a settlement agreement will be enforced.  Id. (citing Lahue v. Pio Costa, 623 A.2d 775, 788 (N.J.Super.Ct.A.D. 1993)); see also Bistricer v. Bistricer, 555 A.2d 45, 47 (N.J.Super. Ch.D. 1987) (stating that "it is not necessary for a writing to contain every possible contractual provision to cover every contingency in order to qualify as a completed binding agreement ... So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound.")(quoting Kupper v. Barger, 111 A.2d, 73, 74-75 (N.J.Super.A.D. 1955)).

     Here, the parties have included the essential terms in their agreement and agreed upon an amount.  There was offer of settlement by Keating, acceptance by Thomas and consideration in the form of a reduced claim and the anticipated relinquishment of

any claim to liens on the property.  See First Pennsylvania Bank, N.A. v. Lloyd, 2007 WL 4302073, at *2 (N.J.Super.A.D. Dec. 11, 2007) (stating that "... a settlement, like any other contract, requires evidence of an offer, acceptance and consideration.") (citations omitted).  The correspondence between Keating and Thomas supports the finding that the parties intended to enter into a final settlement.  In addition, Gerald Green, Keating's project manager for The Walk Project, testified that in his mind there was a final settlement with Thomas.

Keating argues that the settlement was not final because Thomas had not provided certain "close-out" documents to Keating.  Thomas responded by sending Keating the close-out documents which included a release of liens by Thomas thus making this point moot.  Also, as found by the Court during the hearing, the sending of these documents to Keating appears to have been a ministerial act and did not affect the agreed upon terms of settlement.  See In re Columbia Gas System Inc., 50 F.3d 233, 243 (3d Cir. 1995) (finding that reducing terms of global settlement contract to supplemental contracts were functionally ministerial duties and did not alter the relationship forged by the settlement agreement).

There is also uncontroverted evidence that when they agreed upon the final settlement, the parties contemplated existing claims for delay damages.  Thomas states that the

10

parties knew that ACA had delay claims against Keating and Thomas, and that these claims were factored into the negotiated settlement amount. Thomas also relies on Green's testimony in which he testified that he confirmed with ACA that there were no "pending deducts" and that he confirmed that Keating had no "additional deducts as claims or backcharges that would follow." After confirming this, Green testified that he came up with the figure for settlement which was roughly half of what Thomas initially offered. Thomas further relies on Green's testimony that Keating was aware that the project had been delayed and that ACA had a potential delay claim against Keating which was factored into the amount of settlement.

  The testimony of Mr. Green as well as the correspondence between the parties shows that Keating was aware of the delays on the project and the potential delay claims by ACA. The correspondence also shows that the original amount requested by Thomas was cut approximately in half in response to ACA's letter that delays on the Project were attributable to Keating and its subcontractors. Thus, there is no material issue of fact as to whether delay claims were contemplated by the parties at the time of settlement.

  The record does not support a finding, however, that all claims, including workmanship claims unknown at the time of settlement or latent defects were factored into the settlement.

11

Keating argues that the settlement negotiations occurred prior to Keating being sued by ACA and that the parties did not contemplate all of ACA's claims against Keating for which Thomas could be responsible.  Particularly, Keating argues that ACA has brought workmanship claims for leaks in the tenant spaces which Keating states can be attributable to the work performed by Thomas.  Keating also points to Mr. Green's testimony in which he states that the claims contemplated by Keating and Thomas only pertained to claims known at that time.  Keating states it was unaware of any workmanship damages claims allegedly relating to Thomas's performance on the Project, including alleged latent defects causing leaks in the tenant spaces.  During the hearing on this matter, counsel for Thomas admitted that any claims for latent defects would not have been factored into the settlement.

      Thus, although Thomas has shown the parties included potential delay damages in the negotiated amount of settlement, a dispute of material fact exists over whether the parties intended all potential future claims, including unknown workmanship claims, or latent defect claims, to be included in the settlement.

      In sum, we hold that as a matter of law Thomas and Keating entered into a settlement that included any delay damages claim and any other claim known to Keating and ACA at the time of the settlement.  However, any workmanship claims or latent defect

claims - to the extent any such claims are encompassed within this litigation - discovered after the settlement negotiations and that potentially relate to Thomas's work performed on the Project have not been shown to have been included in the settlement.

### IV. **CONCLUSION**

For the foregoing reasons, Thomas's motion for partial summary judgment is granted.  An Order consistent with this Opinion will be filed.

```
                                    s/Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.
Dated: September 27, 2008
```