**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC CITY ASSOCIATES LLC, et al., : : Plaintiffs, : : v. : : CARTER & BURGESS CONSULTANTS, INC., et al., : : Defendants. : | Civil Action No. **05-3227 (NLH)** **(Lead Case)** **OPINION** |
| PALMIERI/PETROCELLI JOINT VENTURE, : : Plaintiff, : : v. : : ATLANTIC CITY ASSOCIATES LLC, et al., : : Defendants. : | (05-5623 Consolidated) |
| THOMAS COMPANY, INC., : : Plaintiff, : : v. : : KEATING BUILDING CORP.,et al.,: : Defendants. : | (06-3735 Consolidated) |

**Appearances**:

JOSEPH A. BATTIPAGLIA
VERONICA J. FINKELSTEIN
DUANE MORRIS LLP
ONE LIBERTY PLACE
PHILADELPHIA, PA 19103-3185
*Attorneys for Atlantic City Associates LLC*

DENNIS P. HERBERT
POWELL TRACHTMAN
1814 EAST ROUTE 70
SUITE 304
CHERRY HILL, NJ 08003
*Attorney for Carter & Burgess Consultants, Inc.*

GLENN W. REIMANN
SARAH PATRICE O'DONNELL
COZEN O'CONNOR
1900 MARKET STREET
PHILADELPHIA, PA 19103
     *And*
JULIE B. NEGOVAN
COZEN O'CONNOR
457 HADDONFIELD ROAD
CHERRY HILL, NJ 08002
*Attorneys for Keating Building Corporation and Liberty Mutual Insurance Company and Daniel J. Keating Construction Corp.*

MARTIN P. SKOLNICK
5021 INDUSTRIAL ROAD
FARMINGDALE, NJ 07729
     *And*
THOMAS M. MULCAHY
PURCELL, RIES, SHANNON, MULCAHY & O'NEILL
ONE PLUCKEMIN WAY
PO BOX 754
BEDMINSTER, NJ 07921
*Attorney for Avon Brothers, Inc. d/b/a Avon Contractors, Inc.*

JOHN F. PALLADINO
JENNA M. COOK
HANKIN, SANDMAN & PALLADINO
30 SOUTH NEW YORK AVENUE
ATLANTIC CITY, NJ 08401
*Attorney for Thomas Company, Inc.*

BRADLEY K. SCLAR
DANA B. OSTROVSKY
PARKER, MCCAY
THREE GREENTREE CENTRE, SUITE 401
ROUTE 73 & GREENTREE ROAD
PO BOX 974
MARLTON, NJ 08053
*Attorney for Petrocelli/palmieri Joint Venture*

CRAIG L. LEVINSOHN
ARONSOHN WEINER & SALERNO
COUNSELLORS AT LAW
263 MAIN STREET.
HACKENSACK, NJ 07601
*Attorney for Johnston Architectural Systems, Inc., d/b/a Delta Fountains, Inc.*

JOHN G. RICHARDS, II
DAVIS, BUCCO, & ARDIZZI, ESQS.
10 EAST 6TH AVENUE
SUITE 100
CONSHOHOCKEN, PA 19428
*Attorney for Davis-Giovinazzo, Inc.*

ANET L. TREIMAN
STEPHANIE WISDO
COHEN SEGLIAS PALLAS GREENHALL & FURMAN
2 WHITE HORSE PIKE
HADDON HEIGHTS, NJ 08035
*Attorney for Vincent J. Borrelli, Inc.*

**HILLMAN, District Judge**

Before the Court are Carter & Burgess Consultants, Inc.'s ("C&B" or "Architect") motion for partial summary judgment and Atlantic City Associates LLC's ("ACA" or "Owner") cross motion for partial summary judgment. C&B seeks dismissal of ACA's claims for consequential damages and seeks a limitation on the amount of damages that ACA can potentially recover against C&B in accordance with the contract entered into between C&B and ACA. ACA argues that the modified language of the contract indemnifying ACA holds C&B responsible for the full amount of damages allegedly due to C&B's negligence, errors and omissions.

On October 23, 2008, a hearing was held and counsel for ACA and C&B presented argument in support of their respective

motions.  For the reasons expressed below, C&B's motion is granted in part and denied in part, and ACA's motion is granted in part and denied in part.

### I. JURISDICTION

In each of the consolidated cases, there is complete diversity between the plaintiff and defendant, and the parties have plead an amount in controversy in excess of $75,000.00. Therefore, this Court exercises subject matter jurisdiction over these consolidated cases pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II. BACKGROUND

These consolidated cases involve a construction project for mixed retail and commercial use property located in Atlantic City, New Jersey referred to as "The Walk" (the "Walk Project"). ACA is the owner/lessee of the property.  C&B provided the architectural, engineering and other design services.

On or about November 15, 2000, C&B submitted a proposal ("Proposal") to ACA to provide architectural services for the Walk Project.  Section F of the Proposal capped damages recoverable from C&B and states in pertinent part:

> To the fullest extent permitted by law, the total liability, in the aggregate, of Architect/Engineer and Architect/Engineer's officers, directors, employees, agents ... to [ACA] ... for any and all injuries, claims, losses, expenses or damages whatsoever arising out of or in any way related to Architect/Engineer's services ... from any

4

> cause or causes whatsoever, including but not limited to, the negligence, errors, omissions, strict liability, breach of contract, misrepresentation or breach of warranty of Architect/Engineer ... shall not exceed the total compensation received by Architect/Engineer under this Agreement.

On June 18, 2001, the parties entered into a signed contract ("Contract" or "Agreement").  Paragraph 1.4.1.3. of the Contract provided that the Proposal was incorporated into the Contract "except where it might result in a conflict with this Agreement, and if such conflict exists, this Agreement shall prevail."  The Contract contained a waiver of consequential damages provision, in paragraph 1.3.6. which stated,

> The Architect and the Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement.  This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Paragraph 1.3.8.

The Contract also contained an indemnity provision, in paragraph 2.9.2.2, which stated,

> The Architect agrees to indemnify, hold harmless, protect the Owner and the Owner's agents, representatives, the Construction Manager, and any affiliated or related entities of the Owner against any and all claims, loss liability, damage, costs and expenses, including reasonable attorney's fees, to the extent caused by the negligent acts, errors or omissions of the Architect, its agents, consultants, employees or representatives.

On May 23, 2002, ACA and C&B entered into a second contract by which the same terms as agreed to in the Walk Project Contract regarding architectural services were agreed to for the adjoining bus terminal project (the "Bus Terminal contract").

As is well known in this litigation, the Walk Project experienced delays and each party to the litigation blamed each other for the delays. ACA and C&B now bring these motions to determine which provisions in the Proposal and the Contract govern their dispute.

### III.  DISCUSSION

#### A.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for

summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Application of New Jersey Law**

A federal district court exercising jurisdiction on the basis of diversity applies the law of the forum state. Chemical Leaman Tank Lines, Inc. V. Aetna Casualty and Surety Co., 89 F.3d 976, 983 (3d Cir. 1996) (stating that "[a]s a federal court

7

sitting in diversity, we must apply the substantive law of New Jersey.") (citing Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992)).  In this case, jurisdiction is founded upon diversity and, therefore, we apply contractual interpretation principles under New Jersey law.  Id.

### C. The Effect of the Indemnity Provision on the Consequential Damages Provision

C&B argues that the express terms of the consequential damages provision, paragraph 1.3.6, encompasses any and all claims that ACA or C&B might have in connection with the services contemplated by the Contract whether based upon contract or tort. ACA argues that the indemnity provision, paragraph 2.9.2.2., either (1) modifies, (2) conflicts with, or (3) harmonizes with the consequential damages provision.  In support of its modification argument, ACA states that the consequential damages provision was part of a form contract from the American Institute of Architects ("AIA"), whereas the indemnity provision was negotiated by the parties and included under the heading for "modifications."  ACA also argues that the indemnity provision includes "any and all" claims caused by C&B's "errors & omissions" which includes consequential damages arising from C&B's negligent acts, errors or omissions.  ACA further argues that the indemnification provision is in conflict with the consequential damages provision and if a conflict exists the specific provisions of 2.9.2.2. control over the more general

provision of 1.3.6.  Finally, ACA argues that the consequential damages provision can be harmonized with the indemnity provision by construing paragraph 2.9.2.2. to require indemnity against all damages caused by C&B's negligence, errors or omissions, while 1.3.6. precludes consequential damages from breaches by C&B not involving negligence, errors or omissions (i.e., if C&B stopped working).

     C&B argues that the indemnification provision does not refer back to the consequential damages provision, or state an intention to modify it.  Rather, C&B states that the indemnification provision was drafted by ACA and that if ACA intended it to modify 1.3.6, it should have put in explicit language that it intended to modify the consequential damages provision.  ACA expressly denies it was the "drafter" of the provision but rather, the provision was negotiated between sophisticated parties.[1]

     C&B also argues that there is no conflict between the two provisions because the indemnity provision requires C&B to hold ACA harmless "against" any and all claims.  C&B states that the word "against" indicates that the provision was intended to be limited to third party-claims.  Therefore, C&B states that it

---

[1] Neither party has asked the Court to deny summary judgment on the basis of any disputed issue of material fact. Rather, both at the hearing on this motion and in their briefs, both parties have urged the Court to interpret the provisions of this Contract and rule as a matter of law.

would be liable for any costs that ACA is liable for and would be required to protect ACA from defending "against" claims brought against ACA, but not liable to ACA in a direct action.  ACA argues that the "any and all" language of the indemnification provision is broader in scope than suggested by C&B and is not limited to third-party claims.

Finally, C&B states that the two provisions cannot be harmonized because both parties mutually waived the ability to recover consequential damages under 1.3.6.  ACA states that these provisions can be read together to allow recovery by ACA of consequential damages arising from C&B's negligence, errors and omissions, but to preclude consequential damages arising from other types of breach of contract.

"In construing a contract, a court's paramount consideration is the intent of the parties."  Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) (citation omitted); Newark Publishers' Ass'n v. Newark Typographical, 126 A.2d 348, 352 (N.J. 1956)(stating that "[t]he actual intent of the parties is ineffective unless made known in some way in the writing.  It is not the real intent but the intent expressed or apparent in the writing that controls.").  To determine the parties' intent, courts must not rely upon the parties' subjective intent but rather look to objective manifestations of their intent.  Mellon, 619 F.2d at 1009

(stating that "... in order to provide contracting parties with a legal framework which provides a measure of predictability, the courts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent."). "The strongest external sign of agreement between contracting parties is the words they use in their written contract." Id. "Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose; and thus the literal sense of terms may be qualified by the context." Newark Publishers', 126 A.2d at 353.

The Court finds that the indemnification provision, paragraph 2.9.2.2, can be harmonized with the consequential damages provision, paragraph 1.3.6. Under paragraph 1.3.6, the parties mutually agreed to waive consequential damages.[2] In that paragraph, the parties did not include a waiver of direct damages so that C&B was still liable to ACA for any direct damages. See id. (affirming that the words used in the contract are the terms the parties intended to include). Under paragraph 2.9.2.2,

---

[2] During the hearing, counsel also presented arguments on what types of damages should come under the rubric "consequential damages" and what types should come under "direct damages," particularly arguing over whether lost profits and lost rent should be consequential or direct damages. The determination of what damages will be considered consequential and what damages will be considered direct is not presently before the Court and will not be decided in this Opinion but left for another day.

11

C&B agreed to indemnify ACA "... against any and all claims ... to the extent caused by the negligent acts, errors or omissions of the Architect ... ."  Since the parties had already agreed to mutually waive consequential damages, this provision shows an intent by C&B to indemnify ACA for direct damages.  Therefore, paragraph 2.9.2.2 requires C&B to indemnify ACA against all direct damages allegedly caused by C&B's negligence, errors or omissions.[3]  In this way, both provisions can be harmonized with each other so as to give effect to the parties' intent and relate them to the contractual scheme as a whole.  See Newark Publishers', 126 A.2d at 353.

### D. Damages Cap

C&B states that Section F of the Proposal capped the damages that ACA could recover from C&B at the amount C&B received in compensation from ACA.  C&B argues that Section F

---

[3] Finding that the two provisions can be harmonized, the Court does not address ACA's alternative arguments that paragraph 2.9.2.2 either modifies or conflicts with paragraph 1.3.6. Nevertheless, the Court notes that the modifying indemnity provision negotiated between the parties can be considered to be broader and more general than the more specific and narrow provision that was part of the form contract.  Where two clauses in a contract are in conflict, the more specific provision controls over the more general provision. Assisted Living Associates of Moorestown, L.L.P. v. Moorestown Township, 31 F.Supp.2d 389, 399 (D.N.J. 1998)(stating that "[i]n New Jersey, it is a well-settled principle of contract interpretation that, in construing the contract as a whole, specific terms or clauses control general terms or clauses."); Burley v. Prudential Ins. Co. of America, 598 A.2d 936 (N.J.Super. A.D. 1991).  Thus, read together, the parties agreed that C&B in general would indemnify ACA except for the narrow category of consequential damages.

limits liability from any cause including negligence, errors, omissions, strict liability, breach of contract, misrepresentation or breach of warranty to the total compensation received by C&B.  C&B further argues that the limitation of liability clause and the indemnification clause are not mutually exclusive and are consistent with each other because the indemnification clause protects ACA from actions instituted against ACA by third-parties whereas the limitations clause caps C&B's total liability in the aggregate to ACA to the amount of compensation C&B received.

ACA argues that Section F of the Proposal conflicts with the indemnity provision, paragraph 2.9.2.2., in the Contract and, therefore, the Contract terms prevail.  ACA also argues that there is no cap on damages because in paragraph 2.9.2.1, C&B was required to carry "errors and omissions" ("E&O") insurance in the amount of $5,000,000 ($4,000,000 per occurrence), but the amount paid to C&B was only approximately 1,500,000.[4]

The Court finds that section F of the Proposal is in conflict with paragraph 2.9.2.2. of the Contract.  Section F caps the damages recoverable by ACA against C&B at the amount that ACA

---

[4] During the hearing the parties advised the Court that the amounts stated in the briefs are no longer accurate following additional discovery.  As of October 23, 2008, the parties estimate the amount paid and/or due to C&B is approximately 3,000,000, which includes payments for both the Walk Project and the Bus Terminal Project.

paid C&B under the Contract.  Conversely, under paragraph 2.9.2.2, C&B agreed to indemnify ACA against any and all claims, loss liability, damage, costs and expenses, except consequential damages, to the extent caused by the negligent acts, errors or omissions of C&B, without limitation.[5]  Thus, these two provisions are in conflict.  Under paragraph 1.4.1.3 of the Contract the parties agreed that the Proposal was incorporated into the Contract "except where it might result in a conflict with this Agreement, and if such conflict exists, this Agreement shall prevail."  Given that the two provisions - one from the Proposal and one from the Contract - conflict with each other, under paragraph 1.4.1.3, the indemnity provision from the Contract prevails and the amount of damages recoverable is not limited to the amount ACA paid to C&B.[6]

---

[5] C&B argues that the indemnification provision is limited to third-parties.  The indemnification provision, however, as written in the Contract does not state that it is limited to third parties and, therefore, there is no evidence of intent by the parties to limit it in this way.  See Beloit Power Systems, Inc. v. Hess Oil Virgin, 757 F.2d 1427, 1430 (3d Cir. 1985)(relying on language in contract that provided for defendant's undertaking to indemnify plaintiff "from *all claims by third parties*")(emphasis in original); see also Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 216 (1st Cir. 2006) (relying on Edward E. Gillen Co. v. United States, 825 F.2d 1155, 1157 (7th Cir. 1987) for the proposition that "there is nothing in the word 'indemnity' that limits it to third parties; and quoting the definition of "indemnity" in Black's Law Dictionary 784 (8th ed. 2004) as "[a] duty to make good any loss, damage, or liability incurred by another").

[6] Because the two provisions conflict, we do not rule on ACA's argument that the requirement for "E&O" insurance prevented

14

**IV.  CONCLUSION**

For the foregoing reasons, C&B's motion for partial summary judgment is granted in part and denied in part and ACA's cross motion for partial summary judgment is granted in part and denied in part.

An Order consistent with this Opinion will be entered.

Noel L. Hillman<br>
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: November 13, 2008

---

a cap on damages.  The Court notes, however, that the existence of the insurance provision and its dollar amount is some evidence supporting our interpretation of the contract.