```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ATLANTIC CITY ASSOCIATES, LLC, : | |
|  : | Civil Action No. |
|     Plaintiff,   : | 05-3227-NLH-JS |
|  : | |
|     v.           : | **OPINION** |
|  : | |
| CARTER & BURGESS CONSULTANTS, : | |
| INC. and KEATING BUILDING    : | |
| CORP.,                       : | |
|  : | |
|     Defendants.  : | |

**APPEARANCES**:

Joseph A. Battipaglia, Esquire
Patrick J. Kearney, Esquire
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103
*Attorneys for Plaintiff*

Timothy J. Bloh, Esquire
Jacob S. Perskie, Esquire
Fox Rothschild LLP
1301 Atlantic Avenue
Atlantic City, NJ 08401
*Attorneys for Defendant*

**HILLMAN, District Judge**

**I.   INTRODUCTION**

Following a thirteen-day trial in this matter, a jury returned a verdict in favor of Plaintiff Atlantic City Associates, LLC ("ACA") on both its breach of contract and professional negligence claims, and against Defendant Carter & Burgess Consultants, Inc. ("Carter") on it breach of contract counterclaim.  On the breach of contract claim, the jury awarded

damages for additional construction costs to fix errors, additional payments to contractors due to delay, lost rental income, and additional administrative costs. Collectively, these damages totaled $7,608,794.30. On the professional negligence claim, the jury awarded damages in the same amount. Now before the Court is the motion of Carter for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a), on issue of the breach of contract damages awarded for additional payments to contractors due to delay, lost rental income, and additional administrative costs. Alternatively, Carter seeks a new trial pursuant to Fed. R. Civ. P. 59. For the reasons set forth below, Carter's motion will be denied.

**II.   BACKGROUND**

This case stems from a construction project to build mixed retail and commercial use property in Atlantic City, New Jersey. ACA is the owner/lessee of the property, which is known as "The Walk." Carter was retained by ACA to provide architectural, engineering, and other design services on the project. Ultimately, the project experienced significant delays for which ACA blames Carter. On June 27, 2005, ACA brought this action against Carter for breach of contract and professional negligence.

On March 26, 2008, Carter filed a motion for partial summary judgment, seeking the dismissal of ACA's claims for consequential

damages pursuant to the terms of the contract between the parties.  On April 22, 2008, ACA filed a cross-motion for partial summary judgment, arguing that Carter was liable for all of the alleged damages.  These motions called upon the Court to interpret a proposal for architectural services submitted to ACA by Carter on November 15, 2000 (hereinafter "the Proposal") and a contract entered into by the parties on June 18, 2001 (hereinafter "the Contract"), which incorporated the Proposal "except where it might result in a conflict with th[e Contract]."  Together these documents comprised the agreement between the parties (hereinafter "the Agreement").  After conducting oral argument on October 23, 2008, the Court issued its Opinion on November 13, 2008.

In its Opinion, this Court held that the Agreement precluded the recovery of consequential damages for any claims arising from or related to the Agreement, but did allow for the recovery of direct damages.  See Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc., No. 05-cv-3227-NLH-JS, slip op. at 11-12 (D.N.J. Nov. 13, 2008).  In so holding, the Court found that the indemnification provisions contained in paragraph 2.9.2.2 of the Contract[1] could be harmonized with the waiver of

---

[1] Paragraph 2.9.2.2 provides:

> The Architect agrees to indemnify, hold harmless, protect the Owner and the Owner's agents, representatives, the Construction

3

consequential damages provision contained in paragraph 1.3.6 of the Contract.[2]  See id. at 11.  "Therefore, paragraph 2.9.2.2 requires [Carter] to indemnify ACA against all direct damages allegedly caused by [Carter's] negligence, errors[,] or omissions."  Id. at 12.  The Court also noted that "[t]he determination of what damages will be considered consequential and what damages will be considered direct is not presently before the Court and will not be decided in this Opinion[,] but left for another day."  Id. at 11 n.2.

On April 13, 2009, Carter filed a motion in limine to bar evidence of damages relating to loss of use, loss of profit, delay, impact, or disruption.  Carter argued section F of the

---

> Manager, and any affiliated or related entities of the Owner against any and all claims, loss, liability, damage, costs and expenses, including reasonable attorney's fees, to the extent caused by the negligent acts, errors or omissions of the Architects, its agents, consultants, employees or representatives.

[2] Paragraph 1.3.6 provides:

> The Architect and the Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement.  This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Paragraph 1.3.8.

4

Proposal[3] contained a definition of consequential damages that was controlling and dictated the preclusion of such evidence as irrelevant.  In essence, Carter was requesting that the Court pick up where it left off at the summary judgment phase with its ruling that the Agreement precluded consequential damages, and define what damages were consequential.  In opposition, ACA argued that Section F was not incorporated into the Agreement and that, even if it had been, all the damages at issue were direct because they flowed naturally from the alleged breach of paragraph 2.9.2.3 of the Contract.[4]  ACA also argued that

---

[3] Section F provides in relevant part:

> Under no circumstances shall [Carter] be liable to [ACA] for indirect, special or consequential damages including but not limited to loss of use, loss of profit, or claims for delay, impact or disruption damages made by [ACA] or any contractors or subcontractors.

[4] Paragraph 2.9.2.3 provides in relevant part:

> All services provided by [Carter] hereunder shall be performed with such reasonable promptness as to cause no delay in the work or in the activities of [ACA], the Construction Manager, or the Contractors, and shall be consistent with the professional skill and judgment which can reasonably be expected from architectural firms of a comparable size performing services similar to those required hereunder for high quality retail and entertainment spaces in the Eastern United States . . . .  [Carter] shall perform all duties and services and make all decisions called for hereunder promptly and without delay and will give this Project such priority

evidence of these damages was admissible with respect to its tort claim, which it alleged was not subject to any contractual limitation on damages.

The Court conducted oral argument on the motion in limine on May 29, 2009.  After hearing argument from the parties, the Court converted the motion to one for summary judgment with the consent of the parties and ruled that Section F was a part of the Agreement and was an "illustrious list of the kinds of consequential damages" barred by the Agreement.  (Tr. at 56:5-6.) Nonetheless, the Court held that any damages flowing from a breach of Paragraph 2.9.2.3 were not barred by Paragraph 1.3.6, even if they fell within the definition of Section F.  Paragraph 2.9.2.3, the Court found, was an express promise that was fairly bargained for by the parties not to delay the project.  As such, to the extent damages flowed naturally from a breach of that provision they were direct damages.  As the Court explained, this provision "takes out of what is normally the realm of consequential damages, loss of rent in a retail complex, and puts it squarely within the category of direct damages, because it's

---

in its office as is necessary to cause [Carter's] services hereunder to be timely and properly performed. [Carter] shall provide information and decisions consistently with review schedules and submittal schedules that are agreed to by [Carter], so long as requests and submittals to [Carter] are made consistently with such schedules.

an expressed promise." (Tr. at 27:3-7.)  Thus, in order to recover damages of an otherwise consequential nature, ACA would have to demonstrate that they arose from a breach of that provision.

In so ruling, the Court was careful to note that ACA would be held to its proofs.  Under the terms of the Agreement, Carter was only potentially liable for a narrow scope of so-called consequential damages; those flowing directly from a breach of Paragraph 2.9.2.3.  Carter would not be on the hook for all categories of potential damages simply because of a breach of Paragraph 2.9.2.3.  ACA would have to demonstrate to the satisfaction of the jury that the damages flowed directly from the breach, and not from the conduct of some third party.

On June 15, 2009, the jury trial commenced.  After the conclusion of testimony and the parties' closing statements the Court issued the Jury Charge.  With respect to the potential breach of Paragraph 2.9.2.3, the Court instructed the Jury, "[i]f you find that Carter failed to perform its services with reasonable promptness, and that such failure directly delayed the activities of ACA or ACA's contractors, you may find that Carter is in breach of the contract entitling ACA to damages."  (Pl. Opp. to Mot. for Judgment as Matter of Law, Exhibit 1 at 18.)  The Court further instructed the Jury, "[i]f you find that Carter's drawings and designs contained errors and omissions, you

7

may find that Carter is in breach of the contract, entitling ACA to damages." (Id.)  The Court was careful to note that "[y]ou should understand that Carter can only be held responsible for delays it caused," and that "[i]f Carter did not cause a particular delay, ACA cannot hold Carter responsible for that delay."  (Id. at 18-19.)

With respect to the availability of contract damages, the Court instructed the Jury that "ACA and Carter have agreed that neither is entitled to consequential damages."  (Id. at 31.)  Therefore, the Court continued, "only direct damages are available in this case."  (Id.)  The Court also explained that "for ACA to recover for its additional construction costs for delay, lost rental income and the extended administrative costs incurred by it and its contractors, you must find that these damages arose naturally from the breach of section 2.9.2.3."  (Id.)

Prior to commencing their deliberation, the Jury was also given a Jury Verdict Sheet to guide their deliberation.  The Jury Verdict Sheet posed a series of questions with respect to each claim in the case, which the Jury was required to make findings on.  One of the questions posed to the Jury was, "[h]as plaintiff proven, by the preponderance of the evidence, that defendant breached section 2.9.2.3 of the contract?"  (Jury Verdict Sheet, Doc. No. 459, at ¶ 4.)  In the event that the Jury found such a

8

breach and that damages resulted, they were asked, "[w]hat amount of damages in the form of additional payments to contractors due to delay, if any, has plaintiff proven reasonably resulted directly from defendant's breach of section 2.9.2.3 and not the conduct of plaintiff or its contractors?"  (Id. at ¶ 6.)  The Jury was then asked the same question with respect to damages in the form of lost rental income and additional administrative costs.  (See id. at ¶¶ 7-8.)

After its deliberation, the Jury returned a verdict in favor of ACA on all counts.  Specifically, *inter alia*, the Jury found that Carter breached Paragraph 2.9.2.3 and that ACA suffered damages as a result.  The Jury went on to find that ACA suffered damages in the form of additional payments to contractors due to delay in the amount of $1,688,048.30 as a direct result of Carter's breach.  It also found that ACA suffered damages in the form of lost rental income in the amount of $3,617,442 as a direct result of Carter's breach.  Finally, it found that ACA suffered damages in the form of additional administrative costs in the amount of $996,231 as a direct result of Carter's breach.

Carter now moves for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a), on the issue of the breach of contract damages awarded for additional payments to contractors due to delay, lost rental income, and additional administrative costs.

9

Alternatively, Carter seeks a new trial pursuant to Fed. R. Civ. P. 59.

### III. DISCUSSION

#### A. Judgment as a Matter of Law

Pursuant to Fed. R. Civ. P. 50(a), a court may grant judgment as a matter of law against a party when it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." In making that determination, the court must view the evidence in the light most favorable to the verdict. See Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003). The court may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150-51 (2000). "A scintilla of evidence is not enough for the verdict winner to survive a Rule 50 motion." Id.; see also Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655, 665 (3d Cir. 2002).

"Although judgment as a matter of law should be granted sparingly," Johnson, 332 F.3d at 204, it must be granted where "the record is critically deficient of the minimum quantum of evidence" in support of the verdict, Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995). "The question is not whether there is literally *no evidence* supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." Gomez,

10

71 F.3d at 1083 (emphasis added).  The motion must be denied "if there is evidence reasonably tending to support the recovery of plaintiffs as to any of its theories of liability."  <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 849 (3d Cir. 1990).

Carter argues that judgment as a matter of law is appropriate in this case because ACA failed to present sufficient evidence for the jury to conclude that the lost rent and delay damages awarded were a direct result of a breach of Paragraph 2.9.2.3.  Carter asserts that the proper method for establishing lost rent damages was for ACA to prove that: Carter failed to act with reasonable promptness with respect to each of the particular units; that delay was caused by each of these failures; and that the tenants were not able to occupy each unit because of the delay.  With respect to delay damages, Carter asserts that ACA had to establish specific failures to act with reasonable promptness and how those failures caused ACA or its contractors or sub-contractors to incur extra costs.  Carter argues that ACA failed to carry its burden of proof on lost rent and delay damages in three ways.  Each argument will be addressed in turn.

First, Carter asserts that the evidence offered by ACA at trial failed to distinguish between a breach of the standard of care and a breach of Paragraph 2.9.2.3.  Specifically, Carter points out that ACA's expert, David Brotman, testified only that the Carter's designs for the many buildings contained numerous

11

errors and omissions which led to delay.  Brotman failed, Carter asserts, to offer any testimony regarding whether it acted with reasonable promptness in providing its designs.[5]  Without such evidence, Carter asserts, ACA cannot demonstrate a breach of Paragraph 2.9.2.3.

This argument minimizes the scope of the what was promised by Carter in Paragraph 2.9.2.3 however.  In Paragraph 2.9.2.3, Carter did not simply promise to act with "reasonable promptness."  It also promised, *inter alia*, that its services would be "consistent with the professional skills and judgment which can be reasonably expected from architectural firms of a comparable size performing services similar to those required hereunder for high quality retail and entertainment spaces in the Eastern United States," and that it would "give this Project such priority in its office as necessary to cause the Architect's services hereunder to be timely and properly performed."  In light of this language, Paragraph 2.9.2.3 is properly viewed as a promise not to delay the project, and not just to act with reasonable promptness.

---

[5] Although Carter concedes that Brotman testified that Carter's designs for buildings 800 and 900 were overdue, it argues that Gary Block of ACA testified that ACA did not hold Carter accountable for the delays on buildings 800 and 900. Carter also concedes that Brotman testified that Carter failed to act promptly during the permitting process, but counters that ACA's expert Evans Barba testified that the permitting issues did not have an effect on overall project delay.

During trial, ACA offered voluminous evidence that Carter failed to act with the requisite skill and judgment with respect to each of the project's buildings, and failed to give the project sufficient priority.  Indeed, Carter itself identified extensive testimony from Brotman regarding the numerous errors and omissions in Carter's work in its brief.[6]  Beyond Brotman's expert testimony, ACA also offered expert testimony from Evans Barba, factual testimony from Gary Block, Bill Barnes, David Cordish, and Daniel Dirscherl, and hundreds of exhibits from which a reasonable jury could conclude that Carter breached Paragraph 2.9.2.3.

Second, Carter argues that ACA failed to present evidence linking any breach of Paragraph 2.9.2.3 to the loss of rent from tenants.  Specifically, Carter asserts that no evidence was presented as to when the leases with the tenants were signed, and that without such a reasonable jury could not conclude that any lost rent resulted directly from any alleged breach of Paragraph 2.9.2.3.  However, ACA did provide evidence in the form of Barba's testimony regarding how certain lost rent was attributable to the delay caused by Carter.  Barba's testimony was based in part on the testimony of Gary Block, who testified

---

[6] Although Carter argues that this testimony is only applicable to whether the negligence standard of care was breached, it also speaks directly to whether Paragraph 2.9.2.3 was breached.

13

as to the delivery dates of each tenant space, and the rent due for each space.  Block also testified as to when the leases were agreed to with each tenant and why leases were not always formally executed in his industry.  The Court finds that the evidence presented at trial was sufficient for a reasonable jury to conclude that Carter's breach of Paragraph 2.9.2.3 directly led to lost rent.

Finally, Carter argues that ACA failed to establish a causal link between any breach of Paragraph 2.9.2.3 and any delay suffered.  Specifically, Carter asserts that while Barba testified as to the number of days of delay attributable to Carter, he did not offer any testimony regarding how that delay directly caused ACA damages.  Moreover, Carter argues, Barba's analysis relied solely on the Brotman's analysis which did not distinguish between a breach of Paragraph 2.9.2.3 and error and omissions.  However, as discussed above, Carter's assertion that evidence of errors and omissions is not sufficient to show a breach of Paragraph 2.9.2.3 is mistaken.  Brotman testified at length about the errors and omissions in Carter's work, and how those errors and omissions resulted in delay.  Barba's testimony then quantified and apportioned that delay.  The Court finds that the evidence presented at trial was sufficient for a reasonable jury to conclude that Carter's breach of Paragraph 2.9.2.3 directly led to delay damages.

14

Thus, the record contains ample evidence from which a reasonable jury could reach the verdict that was returned in this case. Carter's motion for judgment as a matter of law must therefore be denied.

**B.   New Trial**

Where a court denies a motion for judgment as a matter of law under Rule 50, it may still grant a motion for a new trial under Rule 59. See Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988). Pursuant to Fed. R. Civ. P. 59, a court can order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the Courts of the United States." These reasons include prejudicial errors of law and verdicts against the weight of the evidence. See Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993); Maylie v. National R.R. Passenger Corp., 791 F. Supp. 477, 480 (E.D. Pa. 1992), aff'd, 983 F.2d 1051 (3d Cir. 1992). A district court has broad latitude to order a new trial for prejudicial errors of law. See Klein, 992 F.2d at 1289-90; Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995) (noting the court's wide discretion to grant a new trial where basis for request is error involving a matter within the trial court's discretion, such as evidentiary rulings or jury instructions). In evaluating a motion for a new trial on the basis of trial error, the court must first determine whether an error was made

in the course of the trial and then decide "whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" Bhaya v. Westinghouse Elec. Corp., 709 F. Supp. 600, 601 (E.D. Pa. 1989) (quoting Fed. R. Civ. P. 61), aff'd, 922 F.2d 184 (3d Cir. 1990).

"By contrast, a court's discretion to order a new trial for a verdict contrary to the weight of the evidence is more limited." Paolella v. Browning-Ferris, Inc., 973 F. Supp. 508, 511 (E.D. Pa. 1997). The court should only order a new trial under such circumstances if it reasonably concludes that to allow the jury's verdict to stand would result in a "miscarriage of justice." Klein, 992 F.2d at 1290 (quoting Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991)). "'[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" Greenleaf v. Garlock, Inc., 174 F.2d 352, 366 (3d Cir. 1999) (quoting Williamson, 926 F.2d at 1353 (3d Cir. 1991)). It is not a proper basis to grant a new trial merely because the court would have reached a different verdict. Kotas v. Eastman Kodak Co., No. 95-cv-1634, 1997 WL 570907, at *7 (E.D. Pa. Sept. 4, 1997), aff'd, 166 F.3d 1205 (3d Cir. 1998) (Table).

Carter asserts that the Court committed a prejudicial error of law by ruling that lost rent and delay damages are recoverable under Paragraph 2.9.2.3, and by admitting evidence of lost rent and delay damages where the evidence could not be related to a particular breach of Paragraph 2.9.2.3.  In support of its position, Carter recycles the arguments it previously made and the Court previously rejected on summary judgment and during the hearings on its motions in limine.  Distilled to its essence, Carter's argument is that Paragraph 1.3.6 bars consequential damages and so lost rent and delay damages, which are generally consequential in nature, cannot be recovered as a matter of law regardless of what Paragraph 2.9.2.3 provides.  However, this ignores the reality of the contract negotiated by the parties.

As the Court has previously held, Paragraph 2.9.2.3 is a promise by Carter to perform its work with reasonable promptness, with the requisite level of professional skill and judgment, and to afford the project priority in its offices so as not to cause delay to the project.  This provision by its very nature removes from the province of consequential damages certain categories of potential damages when they arise directly from its breach.  When a promise not to delay is breached, it necessarily follows that delay damages may directly result.  Likewise, when the contract containing the promise not to delay is for the design of commercial real estate property created solely for the purpose of

17

generating rental income, it necessarily follows that lost rent damages may directly result from a breach.  Accordingly, it was appropriate to allow evidence of such damages at trial.

Carter insists that Paragraph 2.9.2.3 speaks to liability, while Paragraphs 1.3.6 and 2.9.2.2 speak to remedies.  The Court does not disagree with this proposition, although it cannot agree with Carter as to this proposition's practical effect.  Carter seems to assert that since Paragraph 2.9.2.3 speaks to liability and not damages that its breach does not carry with it any means of relief.  This is a mistake.  When a liability provision is breached the Court must turn to the remedy provisions to determine what relief, if any, is available.  In this case, the Agreement provides that direct damages are available and, as discussed above, given the unique nature of Paragraph 2.9.2.3 the damages that flow directly from it include certain categories which may otherwise have been consequential.

Even if the Court's interpretation of Paragraph 2.9.2.3 is correct, Carter argues, lost rent cannot as a matter of law be considered a direct result of a breach of that paragraph.  In support of this argument, Carter cites to cases interpreting the Uniform Commercial Code ("UCC"), as it was enacted in New York and Pennsylvania.  However, these cases are completely distinguishable from the facts here.  The UCC provides "a comprehensive system for determining the rights and duties of

18

buyers and sellers with respect to contracts for the sale of goods," and it sets forth the seller's and buyer's exclusive remedies in the event of breach. Spring Motors Distrib., Inc. v. Ford Motor Co., 489 A.2d 660, 665 (N.J. 1985).  In this case, Carter was not selling ACA a "good," the ultimate use of which was unknown to it.  It was designing a commercial real estate project the sole purpose of which was to generate rental income.  Moreover, Carter took the unusual step of negotiating a contract that contained an express promise not to delay the project.  Accordingly, while lost rent may be within the realm of consequential damages when it comes to contracts for the sale of commercial goods, it is not limited to that realm and may be a direct damage under the circumstances present in this case.

   Carter also argues that ACA failed to mitigate its damages, and failed to present any evidence of mitigation at trial.  However, mitigation is an affirmative defense, for which the breaching party bears the burden of proof.  Prusky v. ReliaStar Life Inc. Co., 532 F.3d 252, 259 (3d Cir. 2008).  It was up to Carter to present evidence to the jury during trial that there were reasonable actions that should have been taken by ACA to reduce its damages and how much such actions would have reduced the damages suffered.  At trial, however, Carter failed to provide any such evidence.  Accordingly, it cannot argue now that it is entitled to new trial on that basis.

Carter also asserts that the Jury's verdict was against the weight of the evidence, relying on the arguments it made with respect to its motion for judgment as a matter of law. However, for the same reasons expressed above, the Court finds that there was ample evidence presented at trial from which a reasonable jury could have reached the verdict returned in this case. Thus, Carter's motion in the alternative for a new trial must be denied.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment as a Matter of Law shall be denied. An Order consistent with this Opinion will be entered.

Dated:  March 31, 2010            s/ Noel L. Hillman
                                  HON. NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey