**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| ATLANTIC CITY ASSOCIATES, LLC, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 05-3227-NLH-JS |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CARTER & BURGESS CONSULTANTS, | : | |
| INC. and KEATING BUILDING | : | |
| CORP., | : | |
| | : | |
| Defendants. | : | |

---

**APPEARANCES**:

Joseph A. Battipaglia, Esquire
Patrick J. Kearney, Esquire
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103
*Attorneys for Plaintiff*

Timothy J. Bloh, Esquire
Jacob S. Perskie, Esquire
Fox Rothschild LLP
1301 Atlantic Avenue
Atlantic City, NJ 08401
*Attorneys for Defendant*

**HILLMAN, District Judge**

**I.    INTRODUCTION**

This matter comes before the Court on the motion of
Plaintiff, Atlantic City Associates, LLC ("ACA"), to recover pre-
judgment interest, attorney's fees, and other litigation expenses
from Defendant, Carter & Burgess Consultants, Inc. ("Carter").
For the reasons set forth below, ACA's motion shall be granted in
part and denied in part.

## II.  BACKGROUND

This case stems from a construction project to build mixed retail and commercial use property in Atlantic City, New Jersey. ACA is the owner/lessee of the property, which is known as "The Walk."  Carter was retained by ACA to provide architectural, engineering, and other design services on the project. Ultimately, the project experienced significant delays for which ACA blames Carter.  On June 27, 2005, ACA brought this action against Carter for breach of contract and professional negligence.  Thereafter, Carter brought a counterclaim against ACA for breach of contract.

Ultimately, following a thirteen-day trial in this matter, a jury returned a verdict in favor of ACA on both its breach of contract and professional negligence claims, and against Carter on it breach of contract counterclaim.  On the breach of contract claim, the jury awarded damages for additional construction costs to fix errors, additional payments to contractors due to delay, lost rental income, and additional administrative costs. Collectively, these damages totaled $7,608,794.30.  On the professional negligence claim, the jury awarded damages in the same amount.

During the course of this litigation, ACA asserts that it incurred significant attorney's fees and costs, which it now

2

seeks to recover from Carter.[1]  Specifically, ACA now moves for attorney's fees in the amount of $2,881,282.50, and costs as follows:

| | |
|---|---|
| Expert Witnesses | $848,501.22 |
| Transcripts | $36,613.54 |
| Mediation | $10,091.67 |
| Copies | $41,881.01 |
| Electronic Production | $30,206.37 |
| Trial Exhibits | $29,536.00 |
| Jury Consultants | $36,730.25 |
| Other Costs[2] | $46,509.76 |

ACA also seeks to recover prejudgment interest on the amount awarded by the jury.  Carter contests ACA's entitlement to recover both prejudgment interest and its attorney's fees and costs.  Alternatively, Carter challenges the reasonableness of

---

[1] In connection with this motion, ACA has also filed a Motion to Seal Exhibits 1 through 4 of its submissions, which contain the bills of ACA's counsel and expert witnesses, pursuant to L. Civ. R. 5.3(c).  Carter has filed no objection to the Motion to Seal, and the Court is satisfied that ACA has met the requirements of L. Civ. R. 5.3(c).  The information to be protected is confidential in nature, not subject to freedom of information laws or statutes requiring its disclosure, and the party to benefit is a private entity.  See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788-91 (3d Cir. 1994).

[2] "Other Costs" include: Lexis research, Westlaw research, Pacer, messenger service, express messenger service, overnight couriers, telecopying, postage, telephone, video conference, travel/meals, meeting expense, witness fees for depositions, subpoenas, document retrieval, and trial transcripts.

the amounts sought by ACA.

## III. DISCUSSION

### A.   Prejudgment Interest

A federal court sitting in diversity applies the laws of the forum state in determining whether an award of prejudgment interest is appropriate.  See Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982); N. Bergen Rex Trasnp., Inc. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. 1999).  Under New Jersey law, the award of prejudgment interest on contract claims is based on equitable principles.  See County of Essex v. First Union Nat. Bank, 891 A.2d 600, 608 (N.J. 2006).  For such claims, "[t]he allowance of prejudgment interest is a matter of discretion for the trial court."  Id.

> The basic consideration is that the defendant
> has had the use, and the plaintiff has not, of
> the amount in question; and the interest
> factor simply covers the value of the sum
> awarded for the prejudgment period during
> which the defendant had the benefit of the
> monies to which the plaintiff is found to have
> been earlier entitled.

Rova Farms Resort, Inc. v. Investors Ins. Co., 323 A.2d 495, 512 (N.J. 1974); see also County of Essex, 891 A.2d at 608.

For tort claims, the award of prejudgment interest is expressly governed by New Jersey Court Rule 4:42-11(b), which provides, in relevant part:

> [T]he court shall, in tort actions, . . .
> include in the judgment simple interest,
> calculated as hereafter provided, from the

4

date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest. Prejudgment interest shall not, however, be allowed on any recovery for future economic losses. Prejudgment interest shall be calculated in the same amount and manner provided for by paragraph (a) of this rule . . . .

New Jersey Court Rule 4:42-11(a) provides, in relevant part:

Except as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and counsel fees shall bear simple interest as follows:

. . .

(ii) For judgments not exceeding the monetary limit of the Special Civil Part at the time of entry, regardless of the court in which the action was filed: . . . the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of Treasury.

(iii) For judgments exceeding the monetary limit of the Special Civil Part at the time of entry: . . . at the rate provided in subparagraph (a)(ii) plus 2% per annum.

In this case, ACA obtained a judgment on both its breach of contract claim and its professional negligence claim. While it is within the Court's discretion to award prejudgment interest on ACA's breach of contract recovery, the Court need not make any determination with respect to that issue as, no exceptional

5

circumstances being present, it is bound to award prejudgment interest on ACA's professional negligence recovery.

Carter argues that awarding prejudgment interest in this case would go against the principles of equity, because ACA was allegedly not deprived of the use of the money awarded at trial during the pendency of the litigation.  In support of this argument Carter asserts that the construction project was funded by the Casino Reinvestment Development Authority ("CRDA"), and that none of the expenses incurred during construction, for which damages were awarded, were payed for by ACA.  However, as the evidence in this case demonstrates that ACA provided the majority of the funding for the project itself, Carter's argument is unavailing.

Carter also asserts that ACA refused to pay its contractor, Keating Building Corp. ("Keating"), certain contractual sums, known as a "retainage," and that it would be inequitable to give ACA interest on the judgment in this case when it allegedly did not give interest to Keating on the alleged retainage.  However, this argument is completely without merit.  The alleged withholding by ACA of money from its contractor has no bearing whatsoever on whether it is entitled to prejudgment interest on the judgment in this case.

The only issue, therefore, is the amount of interest to be awarded.  As the $7,608,794.30 judgment awarded for ACA's

professional negligence claim exceeds the monetary limit of the New Jersey Superior Court Special Civil Part, the interest rate will be that of the New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of Treasury plus 2% per annum.  See N.J. Ct. R. 4:42-11(a)(iii).  Using those rates, the amount of prejudgment interest breaks down as follows:

| Year | Interest Rate[3] | Interest |
|------|------------------|----------|
| 2005 | 3% | $115,695.36[4] |
| 2006 | 4% | $304,351.77 |
| 2007 | 6% | $456,527.65 |
| 2008 | 7% | $532,615.60 |
| 2009 | 6% | $243,898.33[5] |

The total amount of prejudgment interest to be awarded is thus $1,653,088.71.

**B.   Attorney's Fees and Costs**

"State rules concerning the award or denial of attorney's fees are to be applied in cases where federal jurisdiction is based on diversity . . . ."  McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 775 n.47 (3d Cir. 1990).  As a general matter, New Jersey courts subscribe to the American Rule that

---

[3] The Court has rounded to the nearest whole percent as permitted by N.J. Ct. R. 4:42-11(a)(ii).

[4] Calculated based on 185 days, beginning June 27, 2005.

[5] Calculated based on 195 days, ending July 14, 2009.

parties to litigation each bear their own legal expenses.  See In re Estate of Vayda, 875 A.2d 925, 928 (N.J. 2005); Coleman v. Fiore Bros., Inc., 552 A.2d 141, 142 (N.J. 1989).  Departure from this rule is appropriate, however, where there is "express authorization by statute, court rule or contract," or "when the interests of equity demand it."  Vayda, 875 A.2d at 930 (quoting In re Estate of Lash, 776 A.2d 765, 779 (N.J. 2001) (Verniero & LaVecchia, J.J., dissenting)) (internal quotes omitted).

ACA asserts that it is contractually entitled to attorney's fees in this case pursuant to the Agreement between the parties.[6] Specifically, ACA points to Paragraph 2.9.2.2 of the Contract, which provides:

> The Architect agrees to indemnify, hold harmless, protect the Owner and the Owner's agents, representatives, the Construction Manager, and any affiliated or related entities of the Owner against any and all claims, loss, liability, damage, costs and expenses, including reasonable attorney's fees, to the extent caused by the negligent acts, errors or omissions of the Architects, its agents, consultants, employees or representatives.

In opposition, Carter argues that Paragraph 2.9.2.2 is not an appropriate source for attorney's fees in this case, because

---

[6] On November 15, 2000, Carter submitted a proposal for architectural services to ACA ("the Proposal").  Thereafter, on June 18, 2001, the parties entered into a contract ("the Contract"), which incorporated the Proposal "except where it might result in a conflict with th[e Contract]."  Together these documents comprised the agreement between the parties ("the Agreement").

under common law attorney's fees and costs are consequential

damages, which are barred by Paragraph 1.3.6 of the Contract.[7]

This argument is flawed, however, because it fails to consider

Paragraph 1.3.6 within the context of the Agreement in its

entirety.  As the Court has noted previously in this litigation,

"[w]ords and phrases are not to be isolated but related to the

context and the contractual scheme as a whole, and given the

meaning that comports with the probable intent and purpose."

Newark Publishers' Ass'n v. Newark Typographical, 126 A.2d 348,

353 (N.J. 1956); see also Atlantic City Assocs. LLC v. Carter &

Burgess Consultants, Inc., No. 05-3227-NLH-JS, slip op. at 11

(D.N.J. Nov. 13, 2008) (reconciling Paragraph 1.3.6 and Paragraph

2.9.2.2).

The context of the Agreement in its entirety includes

Carter's express promise in Paragraph 2.9.2.2 to indemnify ACA

for any "costs and expenses, including reasonable attorney's

fees, to the extent caused by [its] negligent acts, errors or

omissions."  This indicates the intent of the parties, both of

---

[7] Paragraph 1.3.6 provides:

> The Architect and the Owner waive
> consequential damages for claims, disputes or
> other matters in question arising out of or
> relating to this Agreement.  This mutual
> waiver is applicable, without limitation, to
> all consequential damages due to either
> party's termination in accordance with
> Paragraph 1.3.8.

whom were very sophisticated and represented by counsel, to remove reasonable attorney's fees and costs from what is normally the realm of consequential damages where they are caused by negligent acts, errors, or omissions.  Paragraph 1.3.6, thus harmonized with Paragraph 2.9.2.2, expresses the intent of the parties to waive only other types of consequential damages within the universe of negligence, and all consequential damages arising from other circumstances.[8]

Carter also argues that Paragraph 2.9.2.2 is not an appropriate source for attorney's fees in this case, because it is an indemnity provision dealing only with claims made by third parties.  The Court has rejected this argument before, and finds it to be no more valid now then it was the last time Carter raised it.  See Atlantic City Assocs. LLC, No. 05-3227-NLH-JS, slip op. at 14 n.5 ("The indemnification provision . . . as written in the Contract does not state that it is limited to third parties and, therefore, there is no evidence of intent by the parties to limit it in this way.") (citing Beloit Power Systems, Inc. v. Hess Oil Virgin, 757 F.2d 1427, 1430 (3d Cir. 1985)).  There is nothing in the word "indemnity" that limits it to third parties.  See Black's Law Dictionary 784 (8th ed. 2004) (defining "indemnity" as "[a] duty to make good any loss, damage,

---

[8] For example, Paragraph 1.3.6 specifically identifies the waiver of all consequential damages for a party's termination in accordance with Paragraph 1.3.8.

10

or liability incurred by another").

Thus, the Court holds that Paragraph 2.9.2.2 provides a contractual basis for the recovery reasonable attorney's fees and costs in this matter to the extent caused by negligent acts, errors, or omissions.[9]  Having so held, the question becomes what

----

[9] The Court notes that ACA also identified Section H of the Proposal as a contractual basis for attorney's fees and costs. However, the Court agrees with Carter that Section H of the Proposal is not an appropriate source for attorney's fees in this case because it conflicts with Paragraph 1.3.6's waiver of consequential damages, and is thus not incorporated into the Agreement.

> Section H of the Proposal provides:
>> In the event of a default or breach of this Agreement by [ACA], [Carter's] remedies shall be all those available at law and, in addition, [Carter] shall be entitled to receive, from [ACA], the reasonable legal and/or collection fees, costs and expenses incurred in connection with curing any breach or default arising hereunder and/or instituting or defending successfully any action or proceeding based upon such default or breach (including the preparation for such actions or proceedings).  [ACA] shall enjoy the same rights as [Carter] per the foregoing sentence in the event of a default or breach of this Agreement by [Carter].

However, as noted above, the Proposal is incorporated into the Contract only to the extent that its provisions are not in conflict with those of the Contract.  Although Section H provides for, *inter alia*, attorney's fees and costs incurred to cure a breach or default of the agreement, Paragraph 1.3.6, as harmonized with Paragraph 2.9.2.2, provides for the waiver of consequential damages outside the universe of negligence.

As a general matter, ACA's arguments to the contrary notwithstanding, attorney's fees and costs are consequential damages since they do not flow directly and immediately from an injurious act.  See Black's Law Dictionary 416 (defining "consequential damages" as "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act"); cf. Veggian v. Camden Bd. of Educ., 600 F. Supp.

portion, if any, of the attorney's fees and costs sought by ACA are reasonable.

Under New Jersey law, the threshold issue in determining the reasonableness of an attorney's fee award "is whether the party seeking the fee prevailed in the litigation." North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. 1999). To be considered a prevailing party, the party must demonstrate that: (1) the lawsuit was causally related to securing the relief obtained; and (2) the party's efforts were a necessary and important factor in obtaining the relief. Id. at 849 (quoting Singer v. State, 472 A.2d 138, 141-42 (N.J. 1984), cert. denied, 469 U.S. 832 (1984)). This threshold issue has been satisfied in this case, as ACA sought relief for Carter's negligence, inter alia, was awarded $7,608,794.30 by the jury for Carter's negligence, and is entitled to reasonable attorney's fees and costs for this award pursuant to Paragraph 2.9.2.2 of the Contract.

The next step in determining the amount of the award is to calculate the "lodestar," which is the number of hours reasonably expended by ACA's counsel in this case multiplied by a reasonable

---

2d 615, 630 (D.N.J. 2009) (addressing plaintiff's claim for attorney's fees as consequential damage of labor union's breach of duty of representation). Accordingly, Section H is in conflict with Paragraph 1.3.6 and is not incorporated into the Agreement.

12

hourly rate.[10]   See Litton Industries, Inc. v. IMO Industries,
Inc., 982 A.2d 420, 428 (N.J. 2009).  The Rules of Professional
Conduct requires that the "factors to be considered in
determining the reasonableness of a fee" include the follow:

> (1) the time and labor required, the novelty
> and difficulty of the questions involved, and
> the skill requisite to perform the legal
> service properly;
>
> (2) the likelihood, if apparent to the client,
> that the acceptance of the particular
> employment will preclude other employment by
> the lawyer;
>
> (3) the fee customarily charge in the locality
> for similar legal services;
>
> (4) the amount involved and the results
> obtained;
>
> (5) the time limitations imposed by the client
> or by the circumstances;
>
> (6) the nature and length of the professional
> relationship with the client;
>
> (7) the experience, reputation, and ability of
> the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

RPC 1.5(a).  Further, the reasonableness of the rates proposed by
prevailing counsel should be evaluated in comparison to rates
"for similar services by lawyers of reasonably comparable skill,

---

[10] "Although the parties could have expressly provided in the
contract what approach would be utilized, in the absence of
express language in the agreement, we resort to our jurisprudence
for attorneys' fee-shifting cases, which includes an analysis of
the same evidence presented for both successful and unsuccessful
claims."  Litton, 982 A.2d at 429.

experience, and reputation in the community." Furst v. Einstein
Moomjy, Inc., 860 A.2d 435, 447 (N.J. 2004) (internal quotes
omitted); see also Litton, 982 A.2d at 428.  The reasonableness
of the hours expended by counsel, meanwhile, are evaluated by
assessing whether they are equivalent to the time "competent
counsel reasonably would have expended to achieve a comparable
result." Furst, 860 A.2d at 447.  Excessive or unnecessary hours
spent on the case must not be included.  Id.  Moreover, the court
should reduce the lodestar if the prevailing party achieved only
limited success in relation to the relief it sought.  See id.;
Litton, 982 A.2d at 428.

     The hourly rates proposed by ACA range from $100 per hour
for a paralegal to $520 per hour for a senior partner, and
average $385 for all fee earners who billed time to the case.
Carter does not challenge the reasonableness of these rates, and
the Court is convinced that they are reasonable in light of the
experience, reputation, and ability of ACA's counsel, as well as
the prevailing rates for similar services in this community.

     Carter does, however, challenge the reasonableness of the
7,466.6 hours expended by ACA's counsel on this case in a number
of ways.  First, Carter argues that ACA should not be permitted
to recover fees for the time expended in pursuit of its claims
for fraud and negligent misrepresentation, which were dismissed
on summary judgment.  In response, ACA asserts that although the

Court dismissed those claims, they should not ne considered
unsuccessful, because the Court found that they were contractual
in nature and not separate causes of action.  Accordingly, ACA
asserts, any time expended in connection with the fraud and
misrepresentation claims was "actually in support of ACA's breach
of contract claim against Carter."  The Court is not convinced by
ACA's argument in this regard.  ACA elected to pursue the legal
theories of fraud of misrepresentation in addition to its other
theories of breach of contract and negligence against Carter, and
was not successful in this pursuit.  As this Court held, neither
fraud nor misrepresentation were valid legal theories in this
case.  The Court fails to see how time expended by ACA
researching the law of fraud and misrepresentation and briefing
its opposition to the summary judgment motion on those issues
advanced its negligence claim.  Thus, attorney's fees for such
time is not properly recoverable in this case.  Based on the
Court's review of the records submitted by ACA, 18.1 hours were
expended in connection with these issues, which must be
subtracted from ACA's application.

Second, Carter argues that ACA should not be permitted to
recover for time that was spend preparing for trial nearly
eighteen months before the trial began, when many additional
parties were involved in the case.  In response, ACA asserts that
the complexity of this case required that trial preparation begin

"months, if not years" before.  It is undisputed that this case
generated thousands of pages of documents, as well as thousands
of pages of deposition transcripts that had to be digested and
analyzed in advance of trial.  Moreover, this matter involved
many complicated legal and factual issues that counsel for each
side had to process.  Accordingly, the Court is satisfied that
the time spent by ACA's counsel analyzing transcripts and
preparing for trial in 2008 is no more than what a competent
counsel reasonably would have spent to achieve a comparable
result.

    Third, Carter argues that ACA should not be permitted to
recover fees incurred for mediation.  Prior to mediation the
parties both signed a Mediation Agreement, which specifically
provided that "[e]ach Party shall be responsible for its own
counsel fees, and the fees and costs of any experts which it
utilizes, and any other costs and expenses incurred by each Party
in preparing for and/or participating in the Mediation."  In
response, ACA asserts that the agreement only provided for the
waiver of the costs of mediation if the parties participated in
good faith and resolved the case.  The mediation, ACA asserts,
was not successful and Carter did not participate in good faith,
however.  Carter disputed this assertion, however, and the is no
evidence before the Court from which it could determine that
Carter failed to participate in the mediation in good faith.  In

16

the absence of such evidence, ACA must be bound by the terms of the Mediation Agreement it committed to.

The Mediation Agreement specifically addressed who would bear the responsibility for attorney's fees and costs associated with the mediation, and so, trumps the more general language of Paragraph 2.9.2.2 on this issue.  Cf. Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556, 560 (3d Cir. 1973) (noting that specific provisions control general provisions); Bauman v. Royal Indem. Co., 174 A.2d 585, 590 (N.J. 1961) (same).  Since ACA agreed that it would be responsible for its own attorney's fees and costs associated with the mediation, these amounts must be subtracted from ACA's fee application.  To hold otherwise would be to render the Mediation Agreement meaningless.  Based on the Court's review of the records submitted by ACA, 258.4 hours were expended solely in participating in or preparing for mediation, which may not be recovered.[11]

Fourth, Carter argues that ACA has failed to strike excessive or duplicate fees from its request.  Specifically, Carter claims that ACA should not be permitted to recover fees for the time expended in pursuit of its claims against other

---

[11] An additional 91.3 hours were expended by ACA's counsel analyzing documents and transcripts in preparation for both trial and mediation.  The Court is satisfied that this time would have been incurred regardless of the mediation, and should be recoverable as a competent counsel reasonably would have spent it to achieve a comparable result.

parties.  Carter points to the approximately thirty depositions involving Keating's sub-contractors, whose claims allegedly were directed at Keating and not relate to ACA's claims against Carter.  In response, ACA asserts that it should be permitted to recover all of the fees incurred litigating claims by and against the other parties, because all of the litigation regarding the Walk allegedly stemmed from Carter's negligence and breach of contract, and were ultimately "passed through the construction chain."

Pursuant to Paragraph 2.9.2.2, ACA may recover "any and all . . . costs and expenses, including reasonable attorney's fees, to the extent caused by the negligent acts, errors or omissions of the Architects, its agents, consultants, employees or representatives."  This would include the attorney's fees and costs incurred by ACA in pursuing the claims by or against the other parties originally involved in this litigation, but only insofar as they are reasonable and the claims were attributable to the negligent acts of ACA.  The Court is satisfied that all of the time incurred for factual discovery from all the parties, including all of the depositions, is recoverable because it contributed to the ultimate success of ACA's negligence claim against Carter.  However, the Court is convinced that other time incurred by ACA in connection with the claims by and against the other parties goes beyond what Paragraph 2.9.2.2 intended to be

18

recoverable.  For example, time spent by ACA prosecuting its claims against the other parties, as opposed to defending against their claims.  It cannot be said that these affirmative claims were caused by Carter's negligence and they did nothing to advance ACA's negligence claims against Carter.  Accordingly, the Court will reduce the hours sought by ACA, after the removal of those hours the Court has already found are not recoverable, by 10%, or 719 hours, to reflect this determination.[12]

ACA asserts that any reductions made to the attorney's fees sought should take into account, and give credit for, the fact that it is not seeking any of the $403,857.57 it paid to its prior counsel.  The Court declines to give any such credit.  ACA has provided no invoices or itemized bills from which the Court could determine whether these fees were related to this matter or reasonable, such that they would justify any sort of credit.  Indeed, with respect to the nature of these fees, ACA offers only that "some" of them were incurred for litigation work in this matter.  Having made the tactical decision not to submit these hours for recovery under Paragraph 2.9.2.2, ACA must be bound by its decision.

Having removed all excessive and unnecessary hours from ACA's proposed reasonable hours, the Court is left 6471.1 hours

---

[12] 7466.6 total hours sought less 18.1 hours for ACA's fraud claims and 258.4 hours for mediation equals 7190.1 hours.  Ten percent of 7190.1 hours equals 719 hours.

that were reasonably expended by ACA's counsel in this matter.
Multiplying these 6471.1 hours by ACA's counsel's reasonable
hourly rate of $385 results in a lodestar of $2,491,373.50.
Carter argues that this lodestar amount should be further
reduced, because of ACA's allegedly limited success at trial.
Carter asserts that ACA sought damages as high as $15,160,221,
but only recovered $7,608,794.30, or approximately fifty percent
of the damages claims.  Accordingly, Carter asserts that the
lodestar be reduced by half.  In response, ACA asserts that in
prevailing on both its breach of contract and negligence claims,
as well as on Carter's breach of contract counterclaim, it was
overwhelmingly successful at trial.  It points out that it
recovered damages in every category of damages sought, recovering
$7,608,794.38 out of $10,434,032.00 in damages presented to the
jury.

The New Jersey Supreme Court has made clear that courts
should consider the difference between the actual damages
recovered and the damages sought in determining whether the
lodestar must be adjusted.  See Litton, 982 A.2d at 429.  This
proportionality test is "necessarily fact-sensitive as there is
no precise test or mathematical calculation for that adjustment."
Id. at 430.  "The ultimate goal is to approve a reasonable
attorney's fee that is not excessive."  Id. at 429.  In Litton, a
reduction to the lodestar was necessary because the damages

20

recovered were "substantially" less than the amount of damages sought.  In this case, ACA was awarded nearly 75% of those damages submitted to the jury.  That success rate is raised even higher when ACA's complete success in its defense of Carter's counterclaim is factored in.  Therefore, the Court is satisfied that ACA's fee is not excessive and that no reduction in the lodestar is necessary.[13]

Finally, Carter argues that the costs sought by ACA are duplicative and excessive in many of the same ways as the fees sought.  ACA concedes that it inadvertently included two shipping fees for $350 and $809, respectively, in its request for costs that should not have been included.  Additionally, ACA spent $10,091.67 for the mediator, which the Court has already found is not recoverable.  ACA also incurred significant costs from its expert witness for their time at and preparing for the mediation, which is not recoverable.  Specifically, David J. Brotman charged ACA $34,908.19 for his work in connection with the mediation. Likewise, Evans Barba charged ACA $78,317.50 for his work in connection with the mediation.  None of these costs are recoverable.  With respect to the costs ACA incurred for copies,

---

[13] The Court notes that the attorney's fees to be awarded in this case equate to approximately thirty-three percent, or one third, of the judgment recovered on behalf of ACA.  Such an amount is routinely deemed appropriate in the context of contingency fees, and seems eminently reasonable in this case given the complexity of the issues involved and the extent to which Plaintiff was held to its proofs.

the Court finds that a reduction of 15% or $6,282.15 is appropriate to account for copies made in connection with the mediation and claims against other parties, which the Court has already held ACA should not be entitled to a recovery for.  The Court is satisfied that the balance of ACA's costs were reasonable and are properly recoverable.  Subtracting these amounts from ACA's initial request for $1,080,069.82 in costs yields costs of $949,311.31 that are properly recoverable.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Pre-Judgment Interest, Attorney's Fees, and Other Litigation Expenses shall be granted in part and denied in part.  An Order consistent with this Opinion will be entered.


Dated:  March 31, 2010          s/ Noel L. Hillman
                                HON. NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey